Our next case for argument is Johnson v. Mitek Systems. Ms. Schuster. Thank you, Your Honor. May it please the Court. I'm Stephanie Schuster here on behalf of the appellant, Mitek Systems. Starting with what's not in dispute here, plaintiff doesn't dispute that he agreed to arbitrate all claims relating to his use of the HireCar app. He doesn't dispute that he asserts such a claim here, and he doesn't dispute that the arbitration agreement is valid and enforceable. The party's disagreement concerns a narrow question of who plaintiff agreed to arbitrate with. That is, what did plaintiff and HireCar mean when they expressly agreed to apply their arbitration clause to, quote, all beneficiaries of the HireCar terms of service? As a matter of plain language, this group of all beneficiaries includes Mitek. The terms granted plaintiff full access to the app, but only if he had his identity verified. The terms also expressly contemplated that HireCar would pay a third party to verify plaintiff's identity, and in fact HireCar paid Mitek to verify plaintiff's identity. That makes Mitek a beneficiary of the HireCar terms and accordingly an intended beneficiary of the arbitration clause. Who else is a beneficiary on that understanding? Suppose HireCar goes to OfficeMax and buys a ream of paper. Is OfficeMax a beneficiary? No, Your Honor. Suppose HireCar gets a lease for its headquarters. Is the lessor a beneficiary? No, Your Honor, because the language of the Well, then why is Mitek any different? The language of the arbitration agreement is all beneficiaries of the services provided under the terms. OfficeMax, in that example, would not qualify. OfficeMax is paid using money raised by selling the services, which is exactly how Mitek is paid. That's why I asked that question. Sure, but Mitek is not nearly as far removed from the agreement because Mitek provides services. No, it's just one step. It's a person paid directly by HireCar to provide goods and services that HireCar needs to carry on its business. Correct, but the ream of paper in your example, Judge Easterbrook, is not part of the service or a condition to accessing the services contemplated by the agreement as where the identity verification services that Mitek provides are. And what the Illinois Supreme Court says in terms of what the appropriate limiting principle is for a defined group of beneficiaries is so long as the beneficiary is identifiable at the time performance is due, that is sufficient. And so Mitek here expressly contemplated that there would be a third party who would provide identity verification services. And identity verification is a condition precedent to plaintiff's access to the services provided under the agreement, the services expressly conveyed in that document. Third party beneficiary status is a question of the contracting party's intent, a question that necessarily turns on the contract's language. Contract signatories are free to give rights and benefits to third parties. Illinois law simply requires that they do so expressly, and they express that intent by conveying benefits either on a specific third party or a group of third parties. So, Ms. Schuster, going back to what you were saying before, so your position is that services, as it appears in the arbitration agreement, includes things that would be required in order for the higher card to provide the benefits it provides to its end users? Yes, Your Honor, because the terms of service define the services that are provided under the agreement as access to the app, which it calls the platform, and the marketplace that's enabled by the platform, by the app. And the terms of service also expressly condition full access to that platform on having identity verification services. Well, sure, so, but, you know, it conditions, but the question is, just looking at the words beneficiary of services or goods provided under the agreement, wouldn't that only encompass things that higher car was contracting to provide to the end users? In other words, access to car rentals. Sure, but what higher car is contracting to provide, by the plain terms of its terms of service, is access to its marketplace, and full access to its marketplace it provides only on that condition. So it only provides full access if your identity is verified. But under that condition rationale just brings us back to what Judge Easterbrook was talking about, in that, you know, higher car would need paper to provide, to do its services. It would need office services or office space to provide the service that it does. Where is the limiting principle that under that, the theory that anyone that is necessary for higher car to provide these services and goods under the agreement should count under this beneficiary theory? Certainly, Your Honor. So our position is not that it's anyone who's necessary. So with Judge Easterbrook's example of office space and paper, the agreement does not itself say, you know, you can have access to these services so long as we have office space and paper. So here's what the agreement says, right? The question is, under the agreement, whether MITAC is a beneficiary. Your answer to my question is essentially, yes, MITAC is a beneficiary, nobody else is. That doesn't sound very likely. What seems to me is that MITAC is generally known as an independent contractor and it is being paid the market price for its services. It's not getting some benefit from the contract. It's selling services at the market price.  Certainly, Your Honor. So our position is not that nobody else is. Another example of who would be among this class of all beneficiaries would be a third-party vendor that provides background check services because that's also a condition to full access. It's an express condition to full access. How about Ford Motor Company, the supplier of the cars? No, Your Honor, because the supply of the cars is, again, not a condition to plaintiffs' full access to the platform provided under the agreement. We're talking about what an express contractual requirement is. And in terms of whether that makes MITAC a beneficiary, the meaning of beneficiary is both. How about Amazon Web Services? Because without Amazon Web Services, nobody is getting access to the platform. I appreciate the point, but my answer is the same, Your Honor. It's not. The Amazon Web Services and the services it provides are not expressly contemplated as a condition to access to the platform, the services provided under the agreement. The parties here made their arbitration clause expressly applicable to all beneficiaries of services provided under the terms. That is an express and direct declaration to convey arbitration rights on all beneficiaries. If you're focused on the language of this in the arbitration provision, it seems to me, and perhaps this is in keeping with what Judge Lee was observing, that the language after the as well as, you know what I'm talking about? Mm-hmm. Comma, as well as, et cetera. That sure seems to me to be most naturally read to be customer language. Customers, okay? Not independent contractors that play a role like this. We disagree, Your Honor, because the language uses the term all beneficiaries. Yeah, it says all authorized or unauthorized users or beneficiaries. Correct, and so it's the word all or authorized or unauthorized that's modifying beneficiaries. Give me an example of an unauthorized beneficiary under your construction. I think our construction is more simple than that. Under Illinois law, there are two types of beneficiaries, intended and incidental, right? All beneficiaries is capacious enough to refer to both. This language makes intended beneficiaries of even incidental beneficiaries of the broader contract intended beneficiaries of the arbitration provision. If the Court would allow, I'd like to reserve the remainder of my time for rebuttal. Certainly, Counsel. Thank you. Mr. Kingsbury. Good morning, Your Honors. Counsel, and may it please the Court. My name is Tim Kingsbury. I'm one of the attorneys representing Joshua Johnson and a putative class in this matter. Your Honors, this appeal involves the same issues this Court resolved just last year in Sosa versus Onfita. Can I ask you a question at the outset about your subject matter jurisdiction argument? Yes, Your Honor. Why did you guys wait until supplemental briefing, I think supplemental jurisdictional statements, to raise an Article III question here? Your Honor, candidly, it's simply because the Seventh Circuit's local rules required us to address all issues of subject matter jurisdiction at the opening of our brief. So we wanted to raise the Article III standing issue here. And the District Court, it just wasn't raised because the arbitration issue and several other motions were filed almost immediately after removal. So there's no... So when the case was removed to federal court, you're not saying, though, that we had no opportunity to bring to the District Court's attention that there's no subject matter jurisdiction over, what is it, the 15C claim? No, I think, Your Honor, this Court could bring that to the District Court. No, no, no. You, you. Oh, an obligation. Your client. If you thought, upon removal, that there's no way, no how, under precedent, under our court's precedent, can the 15C claim be in federal court, couldn't you have brought that to the District Court's attention? Admittedly, Your Honor, I think we could have. We didn't.  I think that changes here in this court because this court, especially as police subject matter jurisdiction, all matters relevant to subject matter jurisdiction, including Article III, standing very closely. That's why we raised it in our brief and then in the amended jurisdiction. Yeah, it's just a very odd posture for this to come up in, just to get tossed in in the form of an amended jurisdictional statement in the Seventh Circuit. I'm not, maybe Judge Easterbrook's seen it or Judge Lee, but I'm not sure I've seen it. Well, to the extent it's, it's not. So if the case were to go back to the District Court, okay, and it's not going to be arbitrated, it's going to be litigated in the District Court, okay, would you agree to a 12B1 dismissal of that claim for lack of subject matter jurisdiction? No, well, the appropriate. A remand? You want to remand it? Remand, that would be the request is that claim should be remanded to state court, which in claims or cases involving the Illinois Biometric Information Privacy Act, following several of this court's decisions on Article III, standing under that act, District Courts have regularly severed and remanded claims over which they lack Article III jurisdiction. So as far as the arbitration issue, the issues in this appeal involve nearly the exact same issues this court resolved in Sosa-Versa on FIDO last year. Like on FIDO, MiTech is a biometric identity verification vendor, and like on FIDO, MiTech argues the plaintiff must arbitrate his claims under the Illinois Biometric Information Privacy Act because MiTech is a third-party beneficiary of its client hired car's user terms and pursuant to an equitable estoppel theory. Obviously, seeing how this court ruled in Sosa, MiTech tries to focus on a single word, beneficiary, in the hired car arbitration provision because that word did not appear in the relevant user terms in Sosa-Versa on FIDO. MiTech essentially argues that that word obliterates the foundational distinction between direct beneficiaries, which are entitled to enforce contractual terms, and merely incidental beneficiaries, which are not. The district court didn't let that. It faithfully followed the standards set forth in Sosa that Illinois law recognizes a strong presumption against conferring contractual benefits on non-contracting third parties. The district court also recognized that Illinois law requires the non-contracting third party to show that the contract was made for its direct benefit. The district court also followed this court's lead in Sosa by looking at the hired car user terms as a whole in order to determine whether plaintiff and hired car intended for MiTech to directly benefit from their agreement. So the district court looked at the terms, saw that the terms identify classes of express beneficiaries such as hired car's representatives, employees, agents, et cetera. Saw that MiTech is not a member of any of those express classes. The district court also saw that the hired car terms make clear that when a hired car user connects to a third party platform, that third party's terms and conditions apply, not hired car's. Accordingly, the district court concluded that MiTech had not overcome the strong presumption against conferring third party enforcement benefits. So on appeal, MiTech's again relying on the dictionary definition of beneficiary and arguing that the district court failed to undertake a plain language analysis of what that word means. But MiTech continues to overlook that the arbitration provision does not extend to anyone who benefits in any manner from the hired car platform. I think as your honors indicated with your questions, that would be a completely unworkable result. There would be no way for a hired car user to know who they're agreeing to arbitrate claims with. It would extend to not just MiTech, it would extend to an unlimited class of persons, such as MiTech service providers, such as Judge Eachbrook indicated Amazon Web Services, or anyone who benefits remotely from the hired car platform. And just to reiterate what the district court found. I'm puzzled by the contention even that MiTech receives a benefit. It's a commercial supplier. It's not asserting consumer surplus. I agree, Judge, and that's our brief. We state presumably the whatever. It's engaged in competition at the market price. And in competition, there's no residual, that is, no residual economic profit. Exactly, your honor. I could not agree more. The benefit, the so-called benefit that MiTech's arguing that it obtains under the terms is clearly not referenced. It's not identified anywhere in the terms. There's no discussion of the rates that hired car will pay MiTech. Importantly, there's no indication that if hired car failed to pay MiTech for its verification services, that MiTech rather would be able to use the terms to enforce that payment. So for those reasons, the district court's determination that MiTech is not an intended third-party beneficiary of hired car user terms should be affirmed. As far as the equitable estoppel argument, MiTech is arguing that a plaintiff misrepresented to MiTech that he would arbitrate any claim against it. And as supposed evidence of MiTech's detrimental reliance on that representation, MiTech says that having to defend a case in Syracuse County and then the Northern District of Illinois and now this court, that that flows directly from that misrepresentation. And I would just point out that like this court found in SOSA, the agreement here is between plaintiff and hired car, not MiTech. So there is no misrepresentation to MiTech. Moreover, under MiTech's logic, equitable estoppel would win every single motion to compel arbitration. On every motion to compel arbitration, the party seeking to enforce arbitration contends that the other party made some representation that they would arbitrate claims and then reneged on that representation. So your honors, I have nothing further. Unless there are any further questions, we would just simply ask that the court affirm the district court's ruling. Thank you. Thank you. Anything further, Ms. Schuster? Thank you, your honors. Just a few quick points. First, Judge Easterbrook, to your question about the contention that MiTech receives a benefit, as a matter of plain language, the word benefit is capacious. It refers to profits, advantages, something that's beneficial, something that's good. Plaintiff concedes right in his complaint and in his brief that MiTech profits from this relationship and that that profit is done by something that's a direct contractual condition to his use of the app. The way that the contractual interpretation goes, this is a broad term. Look at its plain language. And then the Federal Arbitration Act also imposes some additional requirements on interpreting the phrase all beneficiaries in the arbitration clause. And that is to generously construe it. And if there's any doubts, to resolve those doubts in favor of arbitration. Quickly, to address the point about the SOSA case, this court's decision in SOSA doesn't control here. As I mentioned, third-party beneficiary status turns on the language of the specific contract at issue, and SOSA involves an entirely different contract. As opposing counsel admitted, the SOSA arbitration provision did not apply to all beneficiaries. In fact, it didn't apply to any third parties. It expressly applied only to the two signatories. And the contract there expressly disclaimed conveying any third-party beneficiary rights. And then finally, Judge Scudder, I realize I didn't answer the other half of your question. The all beneficiaries language, the first part of that clause before the as well as, refers to any subsidiaries, affiliates, agents, employees, predecessors, successors, et cetera, not simply hire cars. And it is conceivable that the user of this agreement could be an entity with those beneficiaries. So it's not that that applies simply to hire a car. It could be a car rental company, for example, that's using this service to find additional customers. So unless the court has any other questions, we would simply ask that the district court's decision be reversed. Thank you. Thank you very much. The case is taken under advisement.